UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILSON LEI CHEN, also known as "Chen Pokong",<br><br>Plaintiff,<br><br>– *against* –<br><br>X CORP. (formerly Twitter, Inc.),<br><br>Defendant. | **OPINION & ORDER**<br><br>1:26-CV-00047 (ER) |

RAMOS, D.J.:

Wilson Lei Chen ("Chen") brings this action against X Corp.[1] alleging breach of contract, violation of New York General Business Law (NY GBL) § 349, and tortious interference with business relations. Doc. No. 1-1 ¶¶ 24–30. This case arises out of X Corp.'s decision to terminate Chen's X account without notice, which Chen alleges was wrongfully based on his criticism of the Chinese Communist Party (CCP). *Id.* ¶¶ 9, 14, 18. Pending before the Court is X Corp.'s motion to transfer this action to the U.S. District Court for the Northern District of Texas (N.D. Tex.) based on the forum selection clause in X Corp.'s Terms of Service (the "Terms"). Doc. No. 18. For the reasons set forth below, the motion to transfer is GRANTED.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Factual History

Chen, also known as "Chen Pokong," is an author, columnist, and political commentator, who has been a longtime critic of the CCP. Doc. No. 1-1 ¶¶ 2, 14. Chen is a resident of New York. *Id.* ¶ 1. Since 2010, Chen has maintained an active X account and used his account as a forum for his advocacy. *Id.* ¶ 8. Chen alleges that X Corp. permanently suspended his account on February 15, 2023, informing him that he "broke

[1] X Corp. is formerly known as Twitter, Inc.

the X Rules" without providing any prior notice or explanation. *Id.* ¶¶ 9–10. Chen alleges that he was targeted through a campaign by X Corp. to "silence dissenting voices" based on his democracy advocacy and criticism of the CCP. *Id.* ¶¶ 14–16, 18. Chen has made several unsuccessful appeals of his account suspension. *Id.* ¶ 11.

When Chen created his X—then Twitter—Account, the page to sign up for an account displayed a button that said, "Create my account." Doc. No. 18-1 ¶ 13. Below that button was a hyperlink underlined in blue font that said "[b]y clicking on 'Create my account' above, you are agreeing to the Terms of Service above and the Privacy Policy." *Id.* The hyperlink led to a website containing version 3 of X Corp.'s Terms of Service. Doc. No. 18 at 6; Doc. No. 18-1 ¶ 12. Version 3 of the Terms stated that, "[w]e may revise these Terms from time to time. . . . By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms." Doc. No. 18-3 at 10.

On October 16, 2024, X Corp. published version 20 of its Terms, which went into effect on November 15, 2024. Doc. No. 18-1 ¶ 17. X Corp. notified users of the updated Terms through a pop-up notification that prompted users to click a "Got it" button. *Id.*; Doc. No. 18-4. Version 20 contained a forum selection clause stating:

> The laws of the State of Texas . . . will govern these Terms and any dispute that arises between you and us. . . . All disputes related to these Terms or the Services, including without limitation disputes related to or arising from other users' and third parties' use of the Services and any Content made available by other users and third parties on the Services, will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States, and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum.

Doc. No. 18-2 at 11.

**B. Procedural History**

On December 4, 2025, Chen filed suit against X Corp. in New York State Court. Doc. No. 1 ¶ 1. Chen alleges that: (1) X Corp. breached its Terms by terminating his

account without notice, explanation, and fair review of the contract; (2) X. Corp. misleads users about account moderation, appeals, and enforcement; and (3) by permanently suspending his account, X Corp. interfered with Chen's revenue, resulting in significant financial losses. *Id.* ¶¶ 24–30. Chen also seeks restoration of his X account. *Id.* ¶ 31.

This action was removed to the United States District Court for the Southern District of New York on January 5, 2026. Doc. No. 1. X Corp. then filed the instant motion to transfer venue and memorandum of law in support on March 6, 2026. Doc. No. 18. Chen filed his Opposition to X Corp.'s motion on March 17, 2026. Doc. No. 20. X Corp. filed its Reply Motion in Support of its Motion on April 17, 2026. Doc. No. 21.

## II. LEGAL STANDARD

When considering a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), the analysis involves two parts. *Megna v. Biocomp Laboratories Inc.*, 220 F. Supp. 3d. 496, 497 (S.D.N.Y. 2016). First, the court must determine whether the suit could have been filed in the proposed forum. *Id.* Only if the suit could have been filed in the proposed forum does the court determine whether the proposed transfer serves the convenience of the parties and witnesses as well as the interest of justice. *Id.* If this is met, the court proceeds to the second part of the analysis and considers nine factors:

> (1) convenience of witnesses; (2) convenience of the parties; (3) location of relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice.

*Id.* at 498 (quoting *Frame v. Whole Foods Market, Inc.*, No. 06 Civ. 7058 (DAB), 2007 WL 2815613, at *4 (S.D.N.Y. Sep. 24, 2007)). "No one factor is dispositive, and the relative weight of each factor depends on the particular circumstances of the case."

*Smart Skins LLC v. Microsoft Corp.*, No. 14 Civ. 10149 (CM), 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015).

In this case, Chen is proceeding *pro se*. "A *pro se* litigant's papers must be construed liberally 'to raise the strongest arguments they suggest.'" *Jules v. Andre Balazs Properties*, No. 20 Civ. 10500 (LGS), 2023 WL 5935626, at *2 (S.D.N.Y. Sep. 12, 2023) (quoting *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022)).

## III. DISCUSSION

X Corp. moves to transfer this action to the N.D. Tex. pursuant to 28 U.S.C. § 1404(a), arguing that by creating and using an X account, Chen necessarily assented to the Terms, which included the forum selection clause. Doc. No. 18 at 8–10. X Corp. argues that the forum selection clause was reasonably communicated to Chen, that Chen agreed to the Terms, and that the forum selection clause requires this matter to be litigated in Texas because the clause is mandatory and covers the claims presented. *Id.* at 4–8. Further, X Corp. argues that there are no public interest factors that outweigh enforcement of the forum selection clause. *Id.* at 8–10.

Chen disagrees and argues that he did not provide informed consent to the Terms, that the forum selection clause is overly broad, and that the clause does not extend to his non-contractual claims. Doc. No. 20 at 2–3. Chen also argues that the forum selection clause should not be enforced because it is unjust and contravenes public policy. *Id.* at 1–3. Specifically, Chen argues that litigating in Texas would impose a significant burden on Chen and that New York has a strong interest in adjudicating cases involving matters of "significant public concern." *Id.* at 3.

### A. Validity of a Forum Selection Clause

When considering a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), the court must first determine whether the suit could have been brought in the proposed forum. *Atlantic Recording Corp. v. Project Playlist, Inc.,* 603 F. Supp. 2d 690, 695 (S.D.N.Y. 2009). Texas is a proper venue for this matter because Texas has general

personal jurisdiction over X. Corp. 28 U.S.C. § 1391(b)(3) (venue is proper in any jurisdiction where any defendant is subject to the court's personal jurisdiction). A court has general personal jurisdiction over a defendant corporation where the corporation has its principal place of business, and X Corp.'s principal place of business is in Texas. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); Doc No. 1 at ¶ 4.

A forum selection clause may be properly enforced through a § 1404(a) motion to transfer venue. *Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, 571 U.S. 49, 59 (2013). Where a forum selection clause is reasonably communicated, mandatory, and covers the claims presented, it gives rise to a presumption of enforceability. *Phillips v. Audio Active Ltd.,* 494 F.3d 378, 383 (2d Cir. 2007); *Atlantic Marine*, 571 U.S. at 51 (noting that "in all but the most exceptional cases" a forum selection clause should control).

However, the presumption of enforceability for a forum selection clause may be overcome if a plaintiff is able to demonstrate that enforcement of the forum selection clause would be "unreasonable or unjust." *Martinez v. Bloomberg LP*, 740 F.3d 211, 227 (2d Cir. 2014). The court may decline to enforce a forum selection clause if:

> (1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.

*Phillips*, 494 F.3d 378 at 392. The party opposing the forum selection clause must meet a high burden to overcome enforcement. *Martinez*, 740 F.3d at 227.

*1. The Clause was Reasonably Communicated*

When Chen created his X Account, a blue underlined hyperlink containing X Corp.'s Terms was located near the "Create My Account" button. Doc. No. 18-1 ¶ 13. The sign-up page also noted that in creating an account, a user agreed to the Terms. *Id.* The Terms included a clause that X Corp. may change the Terms and that continued use

of the platform after notice of the change in the Terms would constitute acceptance of the Terms. Doc. No. 18-3 at 10. Further, on October 21, 2024, Chen clicked "Got It" on a pop-up notification notifying users that X Corp. was updating its Terms. Doc. No 18-1 ¶¶ 19–20; Doc. No. 18-4. The relevant forum selection clause was contained in these updated Terms. *See* Doc. No. 18-2 at 11–12. Chen does not dispute that there was a hyperlink to X Corp.'s Terms when he signed up, nor that he clicked "Got It" on October 21, 2024.

X Corp. asserts that by creating and using an X Account, Chen necessarily agreed to X Corp.'s Terms. Doc. No. 18 at 5. However, Chen asserts that X Corp.'s Terms were not reasonably communicated to him, arguing that a hyperlink and pop-up notification does not "clearly inform an ordinary user," unrepresented by counsel, of a forum selection clause. Doc. No. 20 at 2.

Terms of service communicated via hyperlink when a user signs up for an account are known as "sign-in wrap," and terms communicated by a pop-up prompting the user to agree are known as "browsewrap." *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 75–76 (2d Cir. 2017). Since sign-in wrap did not require affirmative action by Chen to agree to the Terms, the Court must inquire into whether Chen had notice and assented to the Terms to determine if an agreement was formed. *Id.* at 75. The hyperlink to the Terms on X Corp.'s sign up page constitutes sign-in wrap, and the pop-up notification that Chen received on October 21, 2024, constitutes browsewrap.

"'Actual notice' is notice given directly to, or received personally by a party. It exists when the relevant information has been [] communicated to or received by the noticed party in the form of express or direct information." 58 Am. Jur. 2d Notice § 4. "Inquiry notice is actual notice of circumstances sufficient to put a prudent man upon inquiry." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 120 (2d Cir. 2012) (quoting *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 30 n.14 (2d Cir. 2002)).

Chen alleges that he was not clearly informed that he was agreeing to litigate all disputes in Texas. Doc. No. 20 at 2. Chen claims, and X Corp. does not dispute, that he did not have actual knowledge of the Terms. Therefore, the Court must determine whether Chen had inquiry notice of X Corp.'s Terms through the hyperlink displayed on the page when he signed up for his account. *Meyer*, 868 F.3d at 74–75 ("[w]here there is no evidence that the offeree had actual notice of the terms of the agreement, the offeree will still be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms.").

In assessing whether a user had inquiry notice of the terms, the Court must consider the point of view of a reasonably prudent smartphone/internet user. *Id.* at 77; *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 830 (S.D.N.Y. 2020). A reasonably prudent internet or smartphone user is on inquiry notice of contractual terms where the terms are presented in a clear and conspicuous way. *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 704 (2d Cir. 2023); *see also Specht*, 306 F.3d at 35 (2d Cir. 2002) ("Reasonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility."). This Circuit has held that, a reasonably prudent smartphone user knows that underlined text highlighted in blue indicates a hyperlink that will lead the user to another page with further information. *Meyer*, 868 F.3d at 77–78.

The Terms were reasonably communicated to Chen through the pop-up notification he received on October 21, 2024, informing him that the Terms were being updated. This Circuit has also frequently held that terms communicated in a sign-up wrap format similar to X Corp.'s satisfy the reasonably conspicuous notice requirement. *See id.* at 77; *see also Feld*, 442 F. Supp. 3d at 833 (holding that Postmates' terms presented in a hyperlink upon Sign Up for an account created an agreement between parties); *cf. Specht*, 306 F.3d at 32 (holding that a link to Terms of Service hidden at the bottom of the screen, not visible without scrolling, and with no indication to scroll down, was

insufficient to put user on notice of the terms). Courts have also held that X Corp.'s sign-in wrap Terms were sufficient to put users on inquiry notice. *See St. Clair v. X.AI Holdings Corp.*, No. 1:26 Civ. 00386 (ALC), 2026 WL 1803744, at *3 (S.D.N.Y. June 23, 2026); *see also Taddeo-Waite v. X. Corp.*, No. 3:25 Civ. 00874 (VDO), WL 2025 3237422, at *3 (D. Conn. Nov. 20, 2025). Although Chen may not have had actual notice of the Terms, the hyperlink to the Terms on the sign-up page was sufficient to put him on inquiry notice, thus satisfying the reasonable conspicuous notice requirement.

*2. Chen Manifested his Assent to the Terms*

Chen also manifested assent to X Corp.'s Terms by signing up and using his X Account. When a reasonably prudent user signs up for an account with terms communicated via sign-up wrap, the user manifests assent to the terms by proceeding with account creation, regardless of whether the user clicks on and reviews the terms. *Meyer*, 868 F.3d at 79–80; *Feld*, 442. F. Supp 3d at 832–33.

*3. The Clause was Mandatory*

The Court must next determine if the forum selection clause in X Corp.'s Terms was mandatory or permissive. A forum selection clause is generally only enforceable if the language in the clause confers *exclusive* jurisdiction over the selected forum. *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distributors Inc.*, 22 F.3d 51, 52 (2d Cir. 1994). Phrases like "shall" and "exclusively" have been held to indicate that a forum selection clause was mandatory. *Id.* at 53; *Strategic Marketing & Communications, Inc. v. Kmart Corp.*, 41 F. Supp. 2d 268, 273 (S.D.N.Y. 1998). The forum selection clause in the Terms is mandatory because it says that "[a]ll disputes related to these Terms . . . will be brought *exclusively* in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas" (emphasis added). Doc. No 18-2.

*4. The Claims are Subject to the Clause*

Chen also argues that since two of his claims are non-contractual in nature, they are not subject to the forum selection clause. Doc. No. 20 at 3. To determine whether non-contractual claims are within the scope of a forum selection clause, the Court must examine the "'breadth and specificity' of the forum selection clause." *Cuhadar v. Savoya, LLC*, 766 F. Supp. 3d 434, 446 (E.D.N.Y. 2025) (quoting *Garcia v. S. Grover, CPA, PLLC*, No. 18 Civ. 3000 (AT) (RWL), 2018 WL 5818106, at *3 (S.D.N.Y. Oct. 19, 2018). A broad forum selection clause can encompass claims that are not strictly based on a contract between parties.

The Terms state that "[a]ll disputes *related to* these Terms" are subject to the forum selection clause. Doc. No. 18-2 at 11 (emphasis added). This Court has consistently held that the phrase "related to" indicates a broad forum selection clause. *Redhawk Holdings Corp. v. Craig Investments, LLC*, No. 15 Civ. 9127 (CM), 2016 WL 3636247, at *5 (S.D.N.Y. June 24, 2016) ("broad forum selection clauses usually include terms such as . . . 'relating to'"); *Cuhadar*, 766 F. Supp. 3d at 446 ("forum selection provisions using the word 'related' or 'relating' are broader than those using the phrase 'arising out of.'"); *Coregis Insurance Co. v. American Health Foundation, Inc.*, 241 F.3d 123, 128 (2d Cir. 2001) ("'related to' is typically defined more broadly and is not necessarily tied to the concept of a causal connection"). Thus, the forum selection clause does not solely cover Chen's breach of contract claim but extends to his tort and statutory claims as well. *Redhawk Holdings*, 2016 WL 3636247, at *6 ("a broad forum selection clause encompasses tort claims that grow out of and depend on the existence of a contractual relationship between the parties."). In sum, the forum selection clause in the Terms was reasonably communicated to Chen, is mandatory, and it covers all of Chen's claims.

**B. Public Interest Factors and Enforceability**

Despite the validity of the forum selection clause, Chen also argues that public interest factors require that this Court decline to enforce the clause. Doc. No. 20 at 1. A forum selection clause is enforceable unless it was the result of fraud or overreaching, the law to be applied in the selected forum is fundamentally unfair, enforcement of the clause contravenes a strong public policy of the forum state, or litigating in the selected forum will be so difficult and inconvenient to effectively deprive the plaintiff of their day in court. *Phillips*, 494 F.3d at 392.

Chen argues that because the forum selection clause was part of a form contract, it was induced by disproportionate bargaining power and is thus invalid. Doc. No. 20 at 2–3. He also argues that New York has a strong public interest in keeping the litigation in the state, and that forcing him to litigate in Texas would be so "difficult and inconvenient" for him as to effectively deprive him of his day in court. *Id.* Chen does not argue that clause was induced by fraud or that its terms were fundamentally unfair. For the reasons below, the Court concludes that Chen does not successfully carry his burden to show that public interest factors override enforceability of the forum selection clause.

*1. The Clause was Not Induced by Overreaching*

Chen argues that the forum selection clause was contained in a contract of adhesion, and since he had no ability to negotiate its terms, the Court should decline to enforce it. Doc. No. 20 at 2–3. The Supreme Court held in *Carnival Cruise Lines v. Shute*, that a forum selection clause in a form contract is not unenforceable simply because it is not subject to negotiation. 499 U.S. 585, 593 (1991); *see also Strategic Marketing*, 41 F. Supp. 2d at 272 (declining to find that a forum selection clause was unenforceable because it was part of a form contract not subject to negotiation). Chen had the opportunity to refuse the terms of the contract by not creating an account and he does not assert that was coerced in any way to accept the terms of the contract. *Novak v.*

*Overture Services, Inc.*, 309 F. Supp. 2d 446, 451–52 (E.D.N.Y. 2004) (holding that a forum selection clause contained in a form contract was valid because plaintiff had a full and fair opportunity to refuse its terms).

2. *The Clause Does Not Contravene the Strong Public Policy of New York*

Chen also argues that the interest of justice and public interest factors in this state strongly favor keeping this case in the Southern District of New York. Doc. No. 20 at 3. The Supreme Court has held that a forum selection clause should be held unenforceable if enforcement would go against a strong public policy of the forum where suit is brought. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). Here, Chen asserts that New York, as a global media hub, has a strong interest in adjudicating cases that involve the "silencing of international human rights defenders" within the state. Doc. No. 20 at 1.

In cases involving civil rights issues, the Second Circuit has declined to adopt a *per se* rule that forum selection clauses are presumptively enforceable. *Red Bull Associates v. Best Western International, Inc.*, 862 F.2d 963, 967 (2d Cir. 1988). However, these cases are distinct from Chen's because they involve violations of specific civil rights statutes that carry an explicit public policy encouraging litigation in the original forum. *See id.* at 966 (declining to enforce a forum selection clause, asserting that Congress' basic purpose in incorporating a private right of action in the relevant civil rights law was to "encourage litigation of civil rights claims," and that enforcing a contract "which would prevent or seriously discourage the pursuit of such litigation" would go against public policy); *see also In re Assicurazioni Generali S.p.A. Holocaust Insurance Litigation*, 228 F. Supp. 2d 348, 367 (S.D.N.Y. 2002) (declining to enforce a forum selection clause in a suit alleging violation of the Holocaust Victims Insurance Act, N.Y. C.P.L.R. § 327, because the statute explicitly stated that "no action concerning Holocaust-era insurance claims arising between 1929 and 1945 shall be dismissed from the New York State courts on the ground of *forum non conveniens*").

In his opposition motion, Chen cites no explicit legislative or statutory public policy to support keeping the matter in New York. Chen also does not allege that the forum selection clause would go against New York's public policy, as required in *M/S Bremen*, but rather that New York has a strong public policy of keeping claims like his in New York. 407 U.S. at 15. However, this Circuit has repeatedly held that New York has a strong public policy of enforcing forum selection clauses and that New York's interest in enforcing its laws is insufficient to overcome the enforceability of a valid forum selection clause. *Bent v. Zounds Hearing Franchising, LLC*, No. 15 Civ. 6555 (PAE), 2015 WL 7721838, at *7 (S.D.N.Y. Nov. 30, 2015). Chen also does not allege any specific violations of civil or human rights laws, only that X Corp. has allegedly silenced a "human rights defender." Doc. No. 20 at 3. Finally, Chen does not point to any public policies of Texas that are distinct from New York's or that would make N.D. Tex. an inadequate forum for this litigation.

3. *N.D. Tex. is Not So "Difficult and Inconvenient" a Forum, to Effectively Deprive Chen of His Day in Court*

Finally, Chen argues that transferring this matter to N.D. Tex. would impose a substantial and unnecessary hardship on him. As established above, Chen agreed to the forum selection clause by signing up for an X Account. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for . . . their pursuit of the litigation." *Atlantic Marine*, 571 U.S. at 64; *see also M/S Bremen*, 407 U.S. at 16 (noting that "it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable" when the parties freely agree to a contract designating an international forum. This Circuit has also held that a forum is not necessarily inconvenient due to distance if it is "readily accessible in a few hours of air travel." *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 10 (2d Cir. 1995) (quoting *Calavo Growers of California v. Generali Belgium*, 632 F.2d 963, 969 (2d Cir.1980) (Newman, J., concurring), cert. denied, 449 U.S. 1084 (1981)); *see also*

*Export-Import Bank of U.S. v. Hi-Films S.A. de C.V.*, No. 09 Civ. 3573 (PGG), 2010 WL 3743826, at *9 (S.D.N.Y. Sep. 24, 2010) (declining to find that selected forum was too difficult and inconvenient where plaintiff lived in another country and had "financial problems"). Though Chen is an individual and X Corp. is a large corporation with more resources, Texas is readily reachable by air travel and thus litigating in Texas cannot be said to impose a significant hardship on Chen.

### C. A Motion to Transfer Venue is Not the Appropriate Stage to Make Decisions on the Merits

In opposition to X. Corp.'s motion, Chen makes several arguments on the merits of his case. However, a venue transfer motion is not an appropriate stage of litigation to discuss substantive arguments, and the Court declines to address any of them at this time. *Sargent v. Budget Rent-A-Car Corp.*, No. 94 Civ. 9215 (SHS), 1996 WL 413725, at *2 (S.D.N.Y. July 24, 1996) ("the issue of venue should generally be settled before the merits of a dispute are reached"); *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 330 n.1 (S.D.N.Y. 1998) ("[t]he merits of a case [] are not relevant to a motion to transfer.").

## IV. CONCLUSION

For the reasons set forth above, X Corp.'s motion to transfer venue is GRANTED. The Clerk of Court is respectfully directed to terminate the motion, Doc. No. 18, and to transfer this action to the U.S. District Court for the Northern District of Texas. This Opinion and Order closes the action in the U.S. District Court for the Southern District of New York.

It is SO ORDERED.

Dated: October 15, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.